UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MIRIAN RIVERA, as Executrix of the Estate of VIVIANA RUSCITTO, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>THE VALLEY HOSPITAL, INC., *et al.*,<br><br>Defendants. | Civil Action No.: 15-5704 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant KARL STORZ Endoscopy-America, Inc.'s ("Defendant Karl") Motion to Partially Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 89). Plaintiff Nicholas Roche has submitted an opposition and a Cross-Motion for Leave to Amend (ECF No. 91), to which Defendant Karl replied to (ECF No. 25 on Civ. No 16-4474). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Defendant Karl's Motion to Partially Dismiss Plaintiff Roche's Complaint and denies Plaintiff's Cross-Motion to Amend the Complaint.

## I.  BACKGROUND[1]

This consolidated matter stems from the alleged medical malpractice in treating Decedent Viviana Ruscitto's uterine fibroids. (*See* Civ. No. 16-4474,[2] ECF No. 1 ("Compl.")). Decedent "underwent a robotic assisted laparoscopic supracervical hysterectomy and bilateral salpingectomy, with removal of the umbilical sac" on October 17, 2014 at Defendant The Valley Hospital. (Compl. ¶ 46). According to Plaintiff, prior to this procedure Decedent was unaware of any gynecological cancer. (Comp. ¶ 48). The procedure required the use of a device called a laparoscopic power morcellator, which was produced by Defendant Karl. (Compl. ¶ 50). Plaintiff asserts Decedent was never advised by any of the Defendants that "use of a laparoscopic power morcellator could disseminate and upstage unsuspected cancer." (Compl. ¶ 49).

On October 22, 2014, Decedent was diagnosed with leiomyosarcoma. (Compl. ¶ 51). During her cancer treatment, Decedent underwent a CT scan which revealed that she was suffering from an ovarian blood clot. (Compl. ¶ 52). Ultimately, Decedent needed to undergo "a total open hysterectomy, exploratory surgery, and total abdominal pelvic was." (Compl. ¶ 53). Thereafter, Decedent underwent various other treatments, including chemotherapy, to no avail as the cancer continued to spread throughout her abdomen. (Compl. ¶¶ 55-60). According to Plaintiff, Defendants collectively failed to warn Decedent that use of the morcellator could result in the "dissemination of an occult uterine leiomyosarcoma throughout [her] abdomen." (Compl. ¶¶ 59-60).

---

[1] This background is derived from Plaintiff's Amended Complaint, which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).
[2] Civ. No. 16-4474 was consolidated with the instant action on January 26, 2017. (ECF No. 86). The Court will only discuss Plaintiff Roche's claims since the subject application currently pending before the Court relates only to him.

Decedent's condition never improved and she ultimately passed away. (Compl. ¶ 63). Plaintiff's asserts that Defendant Karl was aware of the defects of the morcellator, but failed to warn Decedent. (Compl. ¶¶ 64 (improperly numbered as 56) – 117 (improperly numbered as 109). Accordingly, Plaintiff filed the within action seeking to recover damages. As to Defendant Karl, Plaintiff asserts the following claims: Count I – Negligent Infliction of Emotional Distress; Count II – Loss of Consortium; Count V – Products Liability and Defective Product violations under New Jersey's Products Liability Act; and Count VI – Failure to Warn in violation of New Jersey's Products Liability Act. Defendant Karl now moves to have Counts I and II dismissed as being subsumed by the New Jersey Product's Liability Act.

## II. LEGAL STANDARD

### A. Motion to Dismiss

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than

conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### B. Motion to Amend

Federal Rule of Civil Procedure 15(a) governs requests for leave to amend, allowing a party to amend its pleadings after obtaining the Court's leave or the written consent of its adversary. Under this liberal rule, the Court must "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also* Wright & Miller section 1484, at 676 ("Subdivision (a)(2) encourages the court to look favorably on requests to amend."). This lenient standard ensures that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990) (internal citation omitted); *see also Sabatino v. Union Township, No.*, 2013 U.S. Dist. LEXIS 54866, 2013 WL 1622306, at *6 (D.N.J. April 15, 2013) (internal citations omitted) (discussing that "if the underlying facts relied upon by a party might be a proper subject of relief, that party should have the opportunity to test its claims on the merits.").

The decision to grant or deny leave to amend under Rule 15(a) is "committed to the sound discretion of the district court." *Arab African Int'l Bank v. Epst*ein, 10 F.3d 168, 174 (3d Cir. 1993). While courts have broad discretion to decide motions to amend, they must "heed Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice." *Voilas et al.*

v. *General Motors Corp., et al.*, 173 F.R.D. 389, 396 (D.N.J. 1997)(internal citations and quotations omitted). In the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive, the court must grant a request for leave to amend. *Grayson v. Mayview State Hosp.*, 293 F. 3d 103, 108 (3d Cir. 2002); *see also Arthur v. Maersk, Inc.*, 434 F. 3d 196, 204 (3d Cir. 2006)(stating that generally, leave to amend should be granted "unless equitable considerations render it otherwise unjust.").

### C. New Jersey's Products Liability Act

A plaintiff asserting a claim under New Jersey's Products Liability Act ("PLA") foregoes the ability to recover under any other theory of liability as it relates to the defective product. N.J.S.A. § 2A:58C-1(b)(3). The language of the PLA makes it clear the Act is the only vehicle a plaintiff may use to recover for a product liability action: "*any claim* or action for harm caused by a product, *irrespective of the theory underlying the claim*, except actions for harm caused by breach of express warranty" falls under the ambit of the Act. Id. (emphasis added); *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991) ("[I]t [is] clear that [the PLA] . . . effectively creates an exclusive statutory cause of action for claims falling within its purview"). Furthermore, New Jersey courts have expressly held that "[t]he [PLA] no longer recognizes negligence or breach of warranty (with the exception of express warranty) as a viable separate claim for 'harm' . . . caused by a defective product." *Tirrell v. Navistar Int'l, Inc.*, 248 N.J. Super. 390, 398 (N.J. Super. Ct. App. Div. 1991); *see Reiff v. Convergent Tech.*, 957 F. Supp. 573, 583 (D.N.J. 1997)("Under New Jersey products liability law, negligence and breach of warranty are no longer viable as separate claims for harm caused by a defective product"); *Oquendo v. Bettcher Indus., Inc.*, 939 F. Supp. 357, 361 (D.N.J. 1996)(same).

### III. ANALYSIS

In this case, dismissal of Plaintiff's common law claims is appropriate. As noted, the law is well settled that a plaintiff asserting a products liability claim under the PLA may only recover under the statute. Here, Plaintiff has asserted two claims under the PLA against Defendant Karl. Counts V and VI explicitly cite to the PLA and allege that Defendant Karl violated the PLA for having a defective productive and for failure to warn of the risks associated with the morcellator. However, Plaintiff has also asserted two common law causes of action at Count I (Negligent Infliction of Emotional Distress) and Count II (Loss of Consortium). These common law causes of action arise directly from Decedent's cancer and death. Said cancer and death are alleged to have been caused by, in part, Defendant Karl's defective morcellator and the failure to warn Decedent that use of the morcellator could cause undiagnosed gynecological cancer to spread. Both of these claims are governed by the PLA. Finally, none of the claims against Defendant Karl relate to the breach of an express warrant. Therefore, Plaintiff is foreclosed from recovering under any other theory of liability in accordance with the PLA.

Additionally, the Court denies Plaintiff's Cross-Motion for Leave to File an Amended Complaint as amending the FAC would be futile. As discussed, all of Plaintiff Roche's claims against Defendant Karl strictly stem from Defendant Karl's allegedly defective morcellator and/or alleged failure to adequately warn Plaintiff and Decedent regarding the risks associated with the use of the morcellator. Both of these claims are covered by the PLA. When a plaintiff asserts a cause of action under the PLA the Act subsumes all other theories of liability and becomes the sole vehicle for recovery. Accordingly, Plaintiff Roche will not be able to assert any other claim against Defendant Karl stemming from the allegedly defective morcellator as it would be subsumed by

6

the PLA. Hence, amending the FAC would be futile and Plaintiff's Cross-Motion for same is denied.

## CONCLUSION

For the aforementioned reasons, this Court grants Defendant Karl's Motion to Partially Dismiss Plaintiff's Complaint and hereby dismisses Counts I and II against Defendant Karl only, with prejudice, and Plaintiff Roche's Cross-Motion for Leave to filed an Amend Complaint is denied.

DATED: March 7th, 2017

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE